FILED

FEB 1 5 2022


PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY_____ DEP CLK

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO. 4:22-CR-13

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL INFORMATION |
| | ) | |
| DUANE MONTRIK BURTON | ) | |
| | ) | |

The United States Attorney charges:

## INTRODUCTION

At all times relevant to this Criminal Information:

1.  The Department of Education ("ED"), an agency of the United States Government, provided oversight and administration of federal funds provided to students under the authority of Title IV of the Higher Education Act of 1965, as amended (hereinafter "Title IV Aid"). Title IV Aid included the Federal Pell Grant Program and the Federal Direct Student Loan Program.

2.  The Pell Grant Program ("Pell Grant") provided grants to eligible students in need of financial assistance to pursue post-secondary education at participating institutions. Pell Grants were made using ED funds and were provided to students for educational purposes. They did not have to be repaid by the student recipient. Pell Grants were awarded to students who had not yet earned a bachelor's or professional degree.

1

3. Under the Federal Direct Student Loan Program ("FDSLP"), the federal government borrowed funds from the United States Treasury and disbursed the loan directly to the student at his or her school. The student repaid the loan directly to the federal government. Subsidized Direct Loans were awarded to students who demonstrated financial need. Because ED subsidized interest, borrowers were not charged interest while enrolled in school at least halftime or during grace and deferment periods. Unsubsidized Direct Loans were awarded to students regardless of financial need. Borrowers were responsible for paying the interest that accrued during any period. For a student to be eligible for a student loan under FDSLP, the student must have received a high school diploma or its equivalent.

4. To be eligible to receive loans or grants, federal regulations required the student to complete a Free Application for Federal Student Aid ("FAFSA") that is submitted to ED's Central Processing System ("CPS") in Clarksville, Virginia. CPS calculated the FAFSA application information submitted by the student using the appropriate federal methodology to produce the expected family contribution and also performed data matching with various other federal agencies to confirm eligibility requirements. CPS would electronically issue an Institutional Student Information Record to post-secondary institutions designated by the student on the FAFSA. ED and the post-secondary institutions relied upon the information that the student provided on the FAFSA to determine whether the student was eligible to receive student financial aid and the amount of any student loan or grant. The FAFSA

2

required student applicants to certify they would use the Title IV Aid only to pay the cost of attending a post-secondary institution and notified them that purposely giving false or misleading information on the FAFSA may subject the student to criminal penalties, including payment of a fine, imprisonment, or both.

5. Title IV Aid had to be used for an educational purpose and could be used to satisfy tuition and fees charged by the institution and other expenses incurred by the student to pursue an education program, such as books, supplies, transportation, and living expenses.

6. To ensure Title IV Aid was used for educational purposes, the funds were sent from ED to the institutions where the students were enrolled. The institutions applied those funds to a student's account to cover the student's tuition, fees, and other educationally related charges incurred by the student at the institution. When the total amount of Title IV Aid credited to the student's account exceeded the total amount of authorized charges, then the institutions would disburse the remaining credit balance refunds to the student within a specified time period.

7. Cape Fear Community College (CFCC), located in Wilmington, North Carolina, within the Eastern District of North Carolina, was a post-secondary institution that participated in the Title IV Aid program. CFCC tuition for North Carolina residents was less than out-of-state students. The North Carolina Residency Determination Service ("NCRDS") informed CFCC whether a student was eligible for reduced in-state tuition.

3

8. CFCC received Title IV Aid for its enrolled students from the Federal Reserve Bank, in Minneapolis, Minnesota.

9. Coastal Carolina Community College ("CCCC"), located in Jacksonville, North Carolina, within the Eastern District of North Carolina, offered the General Educational Development (GED) examination for individuals without high school diplomas and the placement tests for individuals who wished to enroll in online courses at post-secondary institutions.

10. DUANE MONTRIK BURTON (hereinafter referred to as "BURTON") resided in the Eastern District of North Carolina.

## COUNT ONE

11. Introductory Paragraphs 1 through 10 are re-alleged and incorporated by reference into this Count.

12. From in or about February, 2014 to in or about April, 2020, within the Eastern District of North Carolina and elsewhere, DUANE MONTRIK BURTON and others, known and unknown to the United States Attorney, did knowingly and intentionally conspire, confederate, and agree to commit an offense against the United States, to wit, to knowingly and willfully obtain, and assist others to obtain, by fraud and false statements, Federal Student Aid disbursed by the United States Department of Education to permit individuals to attend post-secondary institutions, said funds being provided and insured under subchapter IV of Chapter 28 of United States Code Title 20, and part C of subchapter I of chapter 34 of United States Code

4

Title 42, in violation of Title 20, United States Code, Section 1097(a).

## OBJECT OF THE CONSPIRACY

13. It was the purpose of the conspiracy to fraudulently obtain approximately $294,421 in Financial Aid funds from ED.

## MANNER AND MEANS OF THE CONSPIRACY

14. It was part of the conspiracy to steal the means of identification of homeless people;

15. It was further part of the conspiracy to distribute drugs to individuals in exchange for their means of identification;

16. It was further part of the conspiracy to electronically submit FAFSAs to ED in the names of approximately 28 individuals;

17. It was further part of the conspiracy to electronically apply for admission to CFCC for approximately 28 individuals, who had no intention of attending CFCC;

18. It was further part of the conspiracy to submit fabricated and fraudulently obtained high school transcripts, GEDs and placement test scores to CFCC; and

19. It was further part of the conspiracy to cash CFCC credit balance refund checks or direct CFCC to electronically transfer credit balance refunds into bank accounts opened in other individuals' names.

## OVERT ACTS

20. In furtherance of the conspiracy, and to effect the object thereof, at least one of the co-conspirators herein committed one or more of the following overt acts, among others:

    a. On or about February 6, 2014, BURTON caused the submission of an admission application in HF's name to CFCC that falsely represented HF graduated from high school;

    b. Between on or about September 22, 2014 and February 19, 2016, BURTON directed CFCC to mail three credit refund checks in HF's name to a Jacksonville, North Carolina post office box;

    c. On or about June 22, 2016, BURTON directed CFCC to electronically deposit three fraudulently obtained credit refund checks payable to BF, HF and LW, respectively, into a LW bank account;

    d. On or about February 17, 2016, BURTON directed RG to cash a fraudulently obtained CFCC credit refund check issued to RG in exchange for illegal narcotics;

    e. On or about August 9, 2017, BURTON submitted an admission application in KR's name to CFCC that listed KR's real name, date of birth and social security number;

    f. On or about July 17, 2019, BURTON telephoned NCRDS, posing as JF, to discuss its out-of-state residency determination;

6

g. On or about August 3, 2019, BURTON submitted a residency initial consideration records in JM's name to NCDRS, listing KR as JM's mother;

h. On or about September 17, 2019, BURTON directed JF to cash a CFCC refund check payable to JF in exchange for illegal narcotics;

i. On or about November 12, 2019, BURTON paid JF with illegal narcotics to take the GED examination at CFCC, posing as SF;

j. On or about February 12, 2020, BURTON electronically changed the address for CFCC enrolled students JF, SF, SG, and JM to the same rented Jacksonville, North Carolina post office box;

k. On or about March 3, 2020, BURTON took JM to pick up a CFCC credit refund check issued to JM, which she cashed at a BB&T branch, in Jacksonville, North Carolina; and

l. On or about April 22, 2020, BURTON caused CFCC to electronically deposit a credit refund for TF into SF's BB&T account.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

21. Between in or about August 2017, and in or about February 2018, in the Eastern District of North Carolina and elsewhere, DUANE MONTRIK BURTON, did knowingly use, without lawful authority, the means of identification of KR, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, Theft

of Government Property, in violation of 18 U.S.C. §641, knowing that KR was a real person, in violation of Title 18, United States Code, Section 1028A(a)(1).

## COUNT THREE

On or about July 14, 2020, in the Eastern District of North Carolina, DUANE MONTRIK BURTON did knowingly possess a firearm in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, in violation of Title 18, United States Code, Section 924 (c)(1)(A)(i).

## FORFEITURE NOTICE

Defendant BURTON is hereby given notice that all of the defendant's interest in all property specified herein is subject to forfeiture.

Upon conviction of the offense set forth in Count Three of this Criminal Information, BURTON shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d), as made applicable by Title 28, United States Code, Section 2461(c), any and all firearms and ammunition involved in or used in a knowing commission of the said offense.

The forfeitable property includes, but is not limited to, the following:

(a)     one black 9mm Diamondback DB9 handgun, serial number JY2217, and all associated ammunition seized from his residence on July 14, 2020.

If any of the property described above, as a result of any act or omission of the defendant:

(1) cannot be located upon the exercise of due diligence;

8

(2) has been transferred or sold to, or deposited with, a third party;

(3) has been placed beyond the jurisdiction of the court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

MICHAEL F. EASLEY, JR.
United States Attorney

_____
SUSAN B. MENZER
Assistant United States Attorney

9