IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

Case No. 4:22-CR-00013-M

UNITED STATES OF AMERICA,

      Plaintiff,

v.

DUANE MONTRIK BURTON,

      Defendant.

ORDER

This matter comes before the court on Defendant's pro se Motion for Compassionate Release/Sentence Reduction pursuant to 18 U.S.C. § 3583(c)(1)(A) [DE 38], Defendant's counseled memorandum in support of the motion (DE 43),[1] the United States' response in opposition to the motion (DE 45), and Defendant's reply in support of the motion (DE 47). Defendant seeks compassionate release based on his role as "sole caregiver" for his minor children. For the reasons that follow, the court exercises its discretion and denies Defendant's motion.

## I. Background

On October 3, 2022, this court sentenced Defendant to a term of 65 months' imprisonment after he pled guilty to charges of conspiracy to defraud the United States, aggravated identity theft, and possession of a firearm in furtherance of drug trafficking. DE 30. Defendant filed the present motion on May 27, 2025, requesting that the court reduce his sentence to time served or order him

---

[1] On October 10, 2025, Defendant filed a Memorandum in Support of Defendant's Motion for Compassionate Release (DE 42), which appears to be a draft of the final version filed on October 23, 2025. The court will rely on the final version at DE 43.

released to home confinement because the caregiver of his minor children can no longer serve in that role, and no other family member can do so. DE 38.

In accordance with Standing Order 19-SO-3, the court directed the Federal Public Defender to appoint counsel to represent Defendant for the limited purpose of determining whether he may qualify to seek a reduction of his sentence. DE 40. On June 25, 2025, Nardine Guirguis filed a Notice of Limited Appearance, but filed nothing else in the case, so, on September 26, 2025, the court directed that counsel file a memorandum in support of the pending motion or a notice advising whether the Defendant may qualify to seek a reduction of sentence.

On October 10, 2025, Ms. Guirguis filed a memorandum in support of the Defendant's motion, arguing that Defendant's proffered evidence demonstrates that his children's caregiver is incapacitated in accordance with U.S.S.G. § 1B1.3, and that a review of the § 3553(a) factors demonstrates that a sentence reduction is warranted. After an extension of time, the government filed a timely response on December 10, 2025, arguing that Defendant has not established through the record presented that the caregiver is "incapacitated" or that Defendant would be the sole caregiver, and has failed to demonstrate that a sentence reduction is warranted upon consideration of the § 3553 factors. Defendant was also granted an extension and, on January 26, 2026, he filed a reply brief, contending that his evidence does, in fact, support his position and that his rehabilitation efforts while incarcerated should be considered with the § 3553(a) factors.

In reaching its determination not to exercise its discretion to reduce Defendant's sentence, the court has considered all of the filed documents.

## II.    Legal Standards

For a motion seeking relief under § 3582(c)(1)(A), a district court in its discretion may reduce a defendant's term of imprisonment if: (1) the defendant has fully exhausted all administrative rights to appeal a failure of the BOP to bring such motion on the defendant's behalf *or* the lapse of thirty days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier; and (2) the court finds that extraordinary and compelling reasons warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i);[2] *United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021). In deciding to reduce a sentence based on extraordinary and compelling reasons, the court must consider the factors set forth in section 3553(a), to the extent applicable, and determine that a reduction is consistent with applicable policy statements issued by the United States Sentencing Commission ("Sentencing Commission"). 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Kibble*, 992 F.3d 326, 331 (4th Cir.), *cert. denied*, 142 S. Ct. 383, 211 L. Ed. 2d 204 (2021).

In November 2023, the Sentencing Commission adopted a new policy statement, outlining a non-exhaustive list of circumstances that constitute extraordinary and compelling reasons for compassionate release.[3]  *See* U.S. Sent'g Guidelines Manual § 1B1.13 (U.S. Sent'g Comm'n

---

[2] Alternative grounds for a sentence reduction, inapplicable here, are outlined in § 3582(c)(1)(A)(ii) (listing that the defendant be at least seventy years old, served at least thirty years in prison, and have a BOP determination that he is not a danger to the safety of any other person or the community).

[3] Notably, prior to the 2023 amendment, the Fourth Circuit determined that § 1B.13, while "helpful guidance," was not directly applicable to a motion for sentence reduction, because it was issued prior to, and inconsistent with, elements of the First Step Act. *United States v. McCoy*, 981 F.3d 271, 282 (4th Cir. 2020). The appellate court also determined that "the district court may consider *any* extraordinary and compelling reasons raised by the defendant as well as review § 1B1.13 to determine whether there is a sufficient 'extraordinary and compelling circumstance' warranting a

2023). In addition, the new statement incorporates relevant sections of the First Step Act, including the amendment to Section 3582 which provides defendants with direct access to the courts. *Id.* In this case, Defendant argues for application of § 1B1.13(b)(3)(A) (listing as an extraordinary and compelling reason for a sentence reduction "[t]he death or incapacitation of the caregiver of the defendant's minor child[ren]").

A defendant who seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A) bears the burden of establishing that such relief is warranted. *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024). The court may deny a defendant's motion based on its consideration of the applicable 3553(a) factors, even if extraordinary and compelling circumstances exist. *See Kibble*, 992 F.3d at 331-32. Notably, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

## I.     Analysis

Based on the requirements of § 3582(c)(1)(A), the court must consider (1) whether Defendant exhausted his administrative remedies; (2) if so, whether extraordinary and compelling reason(s) exist warranting a reduction of his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

---

sentence reduction." *United States v. Jenkins*, 22 F.4th 162, 169–70 (4th Cir. 2021); *see also McCoy*, 981 F.3d at 284 ("district courts are 'empowered ... to consider *any* extraordinary and compelling reason for release that a defendant might raise.'") (citation omitted). Here, Defendant relies specifically on the policy statement in U.S.S.G. § 1B1.13(b)(3). DE 38 at 1; DE 43 at 6 ("While under *McCoy* this Court may consider any 'extraordinary and compelling' reason for a reduction in sentence that a defendant might raise, not being limited to those approved under § 1B1.13, in this case Mr. Burton's request does fall within the framework of the policy statement.").

4

A.    Timeliness

The Fourth Circuit has determined that the requirement to exhaust administrative remedies prior to filing a motion under § 3582(c)(1)(A) is "non-jurisdictional, and thus waived if it is not timely raised." *Muhammad*, 16 F.4th at 129 (citing *United States v. Marsh*, 944 F.3d 524, 529 (4th Cir. 2019)).  The record reflects that Defendant requested compassionate release from the BOP on April 1, 2025 (DE 38-4), and received a response from the warden on April 29, 2025, denying the request (DE 38-5).  The government raises no objection in this regard, and the court finds Defendant's motion is timely.

B.    Extraordinary and Compelling Reason Under § 3582(c)(1)(A)

Section 1B1.13(b) sets forth the Sentencing Commission's list of extraordinary and compelling reasons on which defendants may seek a sentence reduction under § 3582(c)(1)(A). Relevant here, § 1B1.13(b)(3)(A) provides the following circumstance which may constitute an extraordinary and compelling reason:

(3) Family Circumstances of the Defendant.

(A) The death or incapacitation of the caregiver of the defendant's minor child[ren] . . . .

U.S.S.G. § 1B1.13(b)(3)(A) (2025).  For purposes of this policy statement, "courts have generally understood the term ['incapacitation'] to require severe impairment of an individual's ability to perform the essential requirements of caring for a minor child." *United States v. Rosario-Cruzado*, No. 24-6365, 2025 WL 1540932, at *2 (4th Cir. May 30, 2025).  The Fourth Circuit has also found that "'incapacitation' means the family member caregiver suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child." *Id.*; *see also United States v. Mahone*, No. 5:12-CR-27, 2025 WL 495376,

5

at *4 (W.D. Va. Feb. 13, 2025), *aff'd*, No. 25-6156, 2025 WL 2965743 (4th Cir. Oct. 21, 2025) (citing *United States v. Collins*, No. 15-10188-EFM, 17-10061-EFM, 2020 WL 136859, at *4 (D. Kan. Jan. 13, 2020)) ("The program statement defines 'incapacitation' as 'a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse . . . is completely disabled, meaning that the spouse . . . cannot carry on any self-care and is totally confined to a bed or chair.'" (quoting BOP Program Statement § 5050.50 at 10).

Courts in this circuit typically find that family circumstances constitute an extraordinary and compelling reason for early release when a defendant has established both that a caregiver is incapacitated and that defendant is the only person able to provide care. *See, e.g., United States v. Patrick*, No. 7:17-CR-00028-M, DE 116 (E.D.N.C. Nov. 15, 2022); *United States v. Flake*, No. 1:19CR508-1, 2025 WL 3496565, at *3 (M.D.N.C. Dec. 5, 2025) (collecting cases); *United States v. Lottier*, No. 7:16cr030, 2020 WL 7233363, at *2 (W.D. Va. Dec. 7, 2020) (collecting cases, including in this district, denying release absent a "robust evidentiary showing" that the defendant is the only available caretaker). "Generally, compassionate release based on family circumstances has only been granted where a defendant is the sole available caregiver for his or her minor child or a closely related and incapacitated adult." *United States v. Burrough*, No. 3:04-cr-00191-FDW, 2022 WL 2318512, at *5 (W.D.N.C. June 28, 2022); *see also United States v. Henriquez*, No. 1:15-CR-225-1, 2021 WL 5771543, at *3 (M.D.N.C. Dec. 6, 2021) ("courts in the Fourth Circuit have generally denied compassionate release on these grounds when other caregivers are available.").

Defendant argues that the plain language of the policy, particularly when compared to other related policy statements, demonstrates that a defendant need not show he or she is the only

6

caregiver available to care for the children. DE 47 at 3. Defendant is correct that, while other similar policy statements require a showing that "defendant would be the only available caregiver" (*see* §§ 1B1.13(b)(3)(B), (C) and (D)), section 1B1.13(b)(3)(A) does not contain such requirement. *See Flake*, 2025 WL 3496565, at *3 (§ 1B1.13(b)(3)(A) "does not specify that 'the defendant would be the only available caregiver' for the family member, unlike other subsections"). Nevertheless, Defendant proffered letters from his family members for the purpose of demonstrating that they are incapable of caring for his children, and the court does not err by considering such evidence. *See Rosario-Cruzado*, 2025 WL 1540932, at *3 (in analyzing evidence proffered by defendant concerning a possible caregiver, the Fourth Circuit found "[i]t was not an error for the district court to address the arguments raised before it."). Moreover, "[t]he guidelines are advisory . . ., and this court, like others, has generally considered whether no other caregiver is available." *Flake*, 2025 WL 3496565, at *3.

In this case, Defendant's two children with Kelly Johnson are currently 11 and 9 years old, and his child with Jillian Wooten is 8 years old. PSR ¶ 45. Ms. Johnson passed away in June 2021, before Defendant was indicted in this case. *See id.* Probation reported in September 2022 that Defendant "has primary custody of all three of his children." *Id.* Defendant argues here that, upon his incarceration, his sister Chantale Brown originally cared for his children, but she has since been diagnosed with Stage 4 kidney disease and moved to South Carolina with her "biological children." DE 38 at 1; DE 39-2. Ms. Brown indicates that, "due to [her] diagnosis, [she] was forced to leave the children in the care of Bernard Jones," Defendant's cousin. DE 39-2. Mr. Jones advises that he has been caring for the children since approximately June 2023, he is 52 years old, single, and works full time; and, he told Defendant in December 2024 that he "cannot

handle these responsibilities and stresses any longer" and was "consider[ing] the foster care system." DE 39. However, he has "agreed to hold on" until resolution of Defendant's motion. *Id.*

The presentence investigation report reflects that, in September 2022, Defendant's parents were 67 years old, retired, and living in Jacksonville, near his former residence. PSR, ¶ 44. However, Defendant has produced evidence indicating that his father passed away in September 2024. DE 39-3. Defendant's mother, Theresa Ward, has written a letter to court, in which she advises that she is "unable to take care of [her] grandchildren due to [her] declining health," including "degeneration of [her] hips which requires a hip replacement." DE 39-1. Ward asserts that she "[has] been in constant pain every day for years." *Id.* Attached to Ward's letter are two medical records indicating her report of pain in her left hip to an orthopedist (*id.* at 2) and the results of an August 31, 2024 MRI, which indicate "moderate osteoarthritis of the left hip" and "mild osteoarthritis of the right hip" (*id.* at 3). Nothing in these records indicates an order or recommendation for a "hip replacement." *See id.*

In addition to Chantale Brown, the presentence report also identifies Jenesis Ward as Defendant's sister who resides in Jacksonville, and Gerald Burton, Defendant's "half-brother," who lives in North Dakota. PSR ¶ 44. Defendant reported that he "maintains a good relationship with his family." *Id.* Ms. Ward submitted a letter, dated February 27, 2025, indicating that she is unable to care for Defendant's children as a "single mother to [her] daughter, a high school senior," and due to her "full time job to support our household" and "emotional challenges that make it difficult to take on the responsibility of caring for three more children." DE 38-7. Defendant has submitted no information from or regarding his brother or the mother of his 8-year-old daughter.

8

The court finds first that Defendant has failed to demonstrate his children's current caregiver, Mr. Jones, is "incapacitated." Mr. Jones does not indicate that he is either seriously injured or ill and unable to care for the children. *See Rosario-Cruzado*, 2025 WL 1540932, at *2; *Mahone*, 2025 WL 495376, at *4  On this finding alone, the court may deny Defendant's motion; however, even if the record were to demonstrate Mr. Jones' incapacitation, Defendant has failed to show that all of his other family members are incapacitated and that he (Defendant) is the only available caretaker for his children.

Again, even if he had made this showing, Defendant has not established that he is suitable caregiver himself, particularly given his criminal history and the fact that, at the time of the criminal conduct, a search of his four-bedroom residence (at which he apparently lived with Ms. Johnson and his children or, at least, permitted them to stay (*see* PSR ¶¶ 17, 18)) revealed the presence of a substantial amount of illegal narcotics, drug paraphernalia, and a loaded 9mm handgun (*id.*, ¶ 18). *See Flake*, 2025 WL 3496565, at *3 (citing *United States v. Cates*, No. 20-CR-223, 2023 WL 167409, at *3-4 (M.D.N.C. Jan. 12, 2023) (finding no extraordinary and compelling reasons existed because the defendant failed to show no other suitable caregiver for his minor children or that he would himself be a suitable caregiver given his history of assaults and the offense conduct involving drug sales from a residence where he lived with his fiancé and small children)); *see also United States v. Jones*, No. 3:21-522-JFA, 2026 WL 555337, at *3 (D.S.C. Feb. 27, 2026) (agreeing with the government's position refuting defendant's § 1B1.13(b)(3)(A) argument, including its "note[ ] that while the minor child was living with the defendant at his home, the defendant was a prolific drug trafficker of various narcotics, he cooked

9

crack cocaine at his residence, and kept a loaded firearm under the couch cushions in the living room.").

In sum, this court finds, in its discretion, that Defendant fails to establish an extraordinary and compelling reason to grant him compassionate release under § 3582(c)(1)(A).

C.    Consideration of the § 3553(a) Factors

Although not required to do so,[4] the court also finds that consideration of the factors set forth in 18 U.S.C. § 3553(a) weighs against granting Defendant's motion at this time, even if he had demonstrated an extraordinary and compelling reason for a sentence reduction. Section 3553(a) requires that a "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." In determining whether such purposes have been fulfilled with respect to the present motion, the court should consider, *inter alia*, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *See* 18 U.S.C. § 3553(a); *see also Jenkins*, 22 F.4th at 170.

---

[4] The Fourth Circuit has instructed that a district court must consider § 3553(a) factors if it "*first* finds that 'extraordinary and compelling reasons warrant such a reduction.'" *Jenkins*, 22 F.4th at 170 ("*If* a district court finds that a defendant has demonstrated 'extraordinary and compelling reasons' for release, it must *then* consider the § 3553(a) sentencing factors 'to the extent that they are applicable'") (emphasis added).

10

The undersigned presided over this action from its inception, including the arraignment and sentencing hearing, and finds Defendant's offense conduct significant: from February 2014 to April 2020, Defendant conspired with others to fraudulently obtain approximately $294,421.00 in U.S. Department of Education (DOE) student aid in the names of 28 individuals. Specifically, Defendant electronically submitted fraudulent loan applications to DOE; paid individuals to pose as other individuals for the purpose of taking the General Educational Development (GED) and placement exams; enrolled individuals who had no intention of attending classes at Cape Fear Community College (CFCC); opened bank accounts in the names of others to receive student aid refunds; and diverted CFCC student aid refunds to himself and his co-conspirators. As a result of Defendant's actions, DOE disbursed $243,032.00. No repayments were ever made. PSR ¶ 11.

Based on this investigation, law enforcement conduct a search of Defendant's residence on July 14, 2020. Officers located and seized the following items: "72.5 grams of cocaine; 4.2 grams of opiates, which included 38 oxycodone pills and 31 amphetamine pills contained in numerous plastic bags; 19.1 grams of marijuana; a digital scale; drug paraphernalia; a bottle of inositol; 2 rounds of ammunition; a loaded 9mm handgun; $9,179 in U.S. currency; and a clear glove and baggies containing marijuana (unspecified amounts)." *Id.* ¶ 19. DOE agents seized additional items, including tax documents, Federal Student Aid paperwork, credit and debit cards in other individuals' names, Social Security cards in other individuals' names, a United States Treasury check for $1,200 made payable to "Hiram Farmer," a notary stamp bearing the name "William Taylor," and a certified copy stamp bearing the name "Robert Thomas." PSR ¶ 18. Thus, in addition to the fraud activity, Defendant was engaging in armed drug trafficking, apparently out of his own residence.

11

Furthermore, Defendant's criminal history includes convictions for Involuntary Manslaughter and Voluntary Manslaughter (during a shootout involving Defendant and two others, one was killed by two rounds and another three rounds pierced through a mobile home and killed a 4-year-old girl), Possession With Intent to Sell or Deliver Cocaine, Possession With Intent to Distribute Cocaine and Possession of Counterfeit Money (federal convictions for which Defendant was sentenced to 180 months' imprisonment and five years on supervised release), and Larceny. PSR ¶¶ 31-35. During his federal incarceration, Defendant incurred four disciplinary infractions and, during his supervised release, he was arrested and charged twice, first with multiple drug-trafficking charges and, second, with felony larceny and conspiracy to commit felony larceny. *Id.* ¶ 34. The court finds that Defendant's history and offense conduct strongly implicate the need for a sentence "to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment," and "to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A)–(B).

This conduct reflects Defendant's concerning lack of consideration for the lives and well-being of others, as well as his disrespect for the law. Notably, at sentencing on October 3, 2022, the court heard argument (including information regarding Defendant's role as a single father to his three children), agreed with the government's recommendation, and departed by 50% of the bottom of the guidelines range to impose a sentence of 65 months in custody. The court considers this one of the most substantial departures it has ever applied, particularly given Defendant's offense conduct and criminal history.

Defendant contends that, during his current incarceration, he has made significant strides toward rehabilitation by starting work in March 2025 as an orderly and taking classes and

12

participating in programs, including financial/business courses, Faith Based Conflict Management, and the National Parenting Program. *See* DE 39-6. The court commends Defendant for his efforts and encourages him to continue engaging in these worthwhile opportunities for his own significant benefit. Defendant asserts also that, upon release, he will return to his Jacksonville residence and to his employment with K.D. Ward Real Estate as an Administrative Assistant (property manager), the same employment he had at the time of his arrest. *See* DE 38-8; PSR ¶ 51.

According to the case docket, Defendant has served approximately 41 months of his sentence (Defendant was ordered to surrender to the U.S. Marshal at sentencing, and he commenced his incarceration on November 21, 2022 (DE 39-5)). The Bureau of Prisons anticipates releasing Defendant on June 30, 2027, with good time credit (*see id.*).

The court has fully considered the § 3553(a) factors and, in its discretion, concludes that the purposes of Defendant's sentence remain unfulfilled.

## III. Conclusion

Defendant has failed to demonstrate that the caregiver for his children is incapacitated and unable to continue in that role, that he is the sole available caregiver, or that he is a suitable caregiver for his minor children. Even if he had succeeded in doing so, however, the court recognizes that Defendant engaged in serious criminal conduct over the course of six years in defrauding the government, possessing with intent to distribute dangerous drugs, and possessing at least one firearm in furtherance of drug trafficking. This conduct resulted in a 65-month sentence, for which Defendant has not yet fulfilled the purposes set forth in 18 U.S.C. § 3553(a).

13

For these reasons, the court exercises its discretion and DENIES Defendant's motion for compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A) [DE 38].

SO ORDERED this 9th day of April, 2026.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

14